DODD v SECRETARY OF STATE

OPINION OF THE COURT

1. NEGLIGENCE—QUESTION OF FACT—JURY QUESTION—DIRECTED VERDICT—TESTIMONY—INFERENCES.

Negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ and if there is doubt as to whether all reasonable men would draw the same conclusion from the evidence then the question of negligence must be submitted to a jury; in applying this standard to a case where the trial court directed a verdict for defendant, the Michigan Supreme Court views the testimony in the light most favorable to the plaintiff and draws the reasonable inferences therefrom which are in his favor.

2. AUTOMOBILES—AUTOMOBILE LIGHTS—STATUTES—SKID MARKS—NEGLIGENCE—JURY QUESTION.

Facts were sufficient to enable a hit-and-run automobile case to go to the jury where the accident occurred at night and the plaintiff testified that he looked both ways and saw no traffic as he started to cross a street, that he stopped and again looked both ways when he reached the middle of the street, and that he did not see any lights or hear any brakes or horn prior to being struck and another witness testified that she saw no lights other than taillights on the hit-and-run car and saw no beams from its headlights because a jury could have found that the hit-run car was traveling without lights, in violation of the Michigan motor vehicle code, and by so doing was negligently operated and the fact that taillights are operable does not mean that the headlights necessarily are in working order also; in addition, where there was testimony that the car may have left 34-35 feet of skid marks which was contradicted by the plaintiff and witness who both testified they heard no sound of

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 57 Am Jur 2d, Negligence §§ 6–9.
[2] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 1012–1017.
[3–5] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 336, 686.
Violation of statute requiring one involved in an accident to stop and render aid as affecting civil liability, 80 ALR2d 299.

brakes being applied, if the jurors chose to believe the car left those skid marks they could have inferred that it was being negligently operated at excessive speed and, if they chose to infer that no brakes were applied, they might infer that the driver was negligent in not maintaining his awareness of the area in front of him and thus failed to keep his car under control at all times.

### SEPARATE OPINION

T. E. BRENNAN, SWAINSON, and M. S. COLEMAN, JJ.

3. AUTOMOBILES—NEGLIGENCE—HIT-AND-RUN MOTORIST—FAILURE TO STOP—STATUTES.

*A jury could properly have considered the fact that a motor vehicle which struck the plaintiff did not stop after the accident as required by a statute and this supports an inference of negligence on the part of the hit-and-run motorist (MCLA 257.617).*

4. AUTOMOBILES—HIT-AND-RUN MOTORIST—FAILURE TO STOP—STATUTES—DUE CARE—INFERENCES—CRIMINAL LAW—FLIGHT—EVIDENCE OF GUILT.

*An ordinarily prudent person has an obligation to stop and render assistance to a fellow human being who has been injured in a collision with his motor vehicle, even without the specific requirements of a statute requiring him to do so; the failure to stop is inconsistent with an assumption that the hit-and-run driver was exercising due care at the time of the collision, it creates an inference in the minds of reasonable people that the driver does not wish to be identified and that his wish to be unidentified stems from a fear of the consequences of being known; this has the authority of precedent in the field of criminal law because, in a criminal prosecution, flight may be shown as evidence tending to prove that the defendant was guilty (MCLA 257.617).*

5. AUTOMOBILES—HIT-AND-RUN MOTORIST—FAILURE TO STOP—STATUTES—SECRETARY OF STATE—NEGLIGENCE—QUESTION OF FACT.

*The fact that a motor vehicle did not stop after an accident is admissible as tending to show negligence on the part of the hit-and-run motorist, in an action based upon a statute which provides in part that where the identity of the motor vehicle and of the driver and owner cannot be established an action may be brought against the Secretary of State, and, in the absence of other direct testimony bearing upon the negligence*

*of the hit-and-run driver, is sufficient to create a question of fact upon the issue of negligence (MCLA 257.1112).*

Appeal from Court of Appeals, Division 2, Fitzgerald, J. P., and McGregor and O'Hara, JJ., affirming Wayne, John M. Wise, J. Submitted September 6, 1973 (No. 11 September Term 1973; Docket No. 54,482.) Decided December 18, 1973.

43 Mich App 293 reversed.

Complaint by Roy D. Dodd against the Secretary of State and John Doe, for damages for injuries sustained in a hit-and-run automobile accident. Directed verdict and judgment for defendant Secretary of State. Plaintiff appealed to the Court of Appeals. Affirmed. Plaintiff appeals. Reversed and remanded for new trial.

*Daniel A. Burress,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for defendant Secretary of State.

T. M. KAVANAGH, C. J. This case is before us on leave granted from a decision of the Court of Appeals, 43 Mich App 293; 204 NW2d 346 (1972)[1] upholding a directed verdict in favor of the defendant. The trial court held that there were insufficient facts and inferences therefrom presented in this hit-and-run case upon which the negligence of the driver could be submitted to the jury. We disagree.

At 1:30 a.m. on January 12, 1967 the plaintiff was struck by a hit-run vehicle while he was in

---

[1] Justice O'HARA dissenting.

the process of crossing Grand River Avenue near Lesure in the City of Detroit. The driver of the vehicle was never found.

In his brief on appeal to this Court, plaintiff-appellant sets forth a statement of facts, which is accepted by the defendant-appellee. That statement is as follows:

"Grand River is a wide, seven-lane artificially lighted, paved road, running in a northwesterly direction from downtown Detroit. Lesure runs generally north and south and ends at Grand River. The collision took place in a locality described as 'business'.

"Sidewalks are installed along each side of Grand River and Lesure. On the date of the accident the weather was clear, the road was dry and it was cold. No pedestrian cross-walk is provided at this intersection. Prior to the collision plaintiff, Roy Dodd, born August 10, 1909, had consumed two or three drinks at Snack's Bar which is located on the southerly side of Grand River at approximately at the point where Lesure would cross Grand River were it not a dead-end street. He left at the same time as Marie Autrey, a waitress at the bar. Mrs. Autrey, a widow and mother of two children, had some conversation with plaintiff at the front entrance of the bar, closed and locked the door, saw him walk from the bar and step off the curb; she then turned and proceeded toward her car in the parking lot. At this time she did not notice any traffic on Grand River. After she unlocked and opened the car door she heard a 'thud' and turned and saw Mr. Dodd up in the air. The car was still there but kept going. She then went over to plaintiff, returned to the bar to have the police called and went back and put her coat over him and waited for the police and ambulance to arrive. Plaintiff was not conscious and did not talk. His trousers were down around his ankles, his hat was off, and his glasses, which he had been wearing previously were not on.

"Mrs. Autrey gave a statement to the police and showed them approximately where the accident took

place. At the location, which was the second lane from
the northerly curb, they found 34–35 feet of skid marks.

"She testified that when she heard the thud she
turned and saw plaintiff up in the air over the left front
fender. The automobile was in the second lane from the
northerly curb. She also testified that when Mr. Dodd
left the bar he appeared to be walking and talking
normally.

"Plaintiff testified that he had two or three drinks in
the bar, left at the same time as Mrs. Autrey, went to
the curb, looked, saw no traffic, and proceeded to the
middle of the street; he started crossing Grand River at
a point opposite the sidewalk of Lesure; when he ar-
rived at the middle of the street he then looked both
ways again, saw nothing and went on across. He had
crossed five lanes and was in the sixth lane when he
was struck. He did not hear any brakes or horn or see
any lights prior to being struck. He further testified
that his physical condition at the time was okay.

"Mrs. Autrey testified that when she saw the car
after hearing the 'thud' she saw tail lights but did not
hear the sound of brakes screeching. She is aware that
tail lights come on when brakes are applied. She also
testified that the car was traveling at a speed of 25 or
over. The speed limit is 35 miles per hour. Additionally,
she testified that she did not observe the car too long
after striking Mr. Dodd because she was concerned for
him and was upset."

The record reveals she further testified that she
did not see any headlights on the car, nor did she
see any beam from a headlight. She did state,
however, she only saw the rear of the car and
never saw the front end.

Pursuant to the provisions of MCLA 257.1112;
MSA 9.2812 suit was brought against the Secre-
tary of State for the injuries suffered by Mr. Dodd
in the accident. The sole question presented this
Court is whether or not the facts testified to above
are sufficient to require the submission of the case
to the jury on the question of whether or not the

driver of the hit-run vehicle was negligent in its operation, which negligence was a proximate cause of the accident.

The standard governing whether or not a case must be submitted to the jury was originally set forth by Justice COOLEY in *Detroit & Milwaukee R Co v Van Steinburg,* 17 Mich 99 (1868) as follows (pp 122–123):

"It is a mistake, therefore, to say, as is sometimes said, that when the facts are undisputed the question of negligence is necessarily one of law. This is generally true only of that class of cases where a party has failed in the performance of a clear legal duty. When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence can not be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they can not be decided upon by the court. Negligence can not be conclusively established by a state of facts upon which fair-minded men may well differ. In *Ireland v Oswego R. R. Co.,* 13 N. Y. 533 [1856], Judge Johnson, speaking upon this subject, says: 'The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact, from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their force and weight considered. In such case the inference can not be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout. Presumptions of fact, from their very nature, are not strictly objects of legal science, like presumptions of law. That the care exercised by the plaintiff at the time of the injury, and the negligence of the defendant, were both questions for the jury to determine, can not admit of any doubt.' "

This standard was reaffirmed by this Court in
*McCullough v Ward Trucking Co,* 368 Mich 108;
117 NW2d 167 (1962) where this Court stated (p
111):

"The decisional test comes from the pen of Mr. Jus-
tice COOLEY, reflected in *Bronson v Oakes* (CCA 8), 76 F
734, 739, 740 [1896] (following *Jones v East Tennessee
V. & G. R. Co.,* 128 US 443 [9 S Ct 118, 32 L ed 478]
[1888], and *Grand Trunk R. Co. v Ives,* 144 US 408, 417
[12 S Ct 679, 36 L ed 485] [1892]):

" 'When it can be affirmed that all reasonable men
would agree as to the quality of an act in respect of its
being either negligent or prudent, the court may give
effect to such consensus of opinion, and direct a verdict
in accordance therewith. The direction is given, not
because it is the judge's opinion alone, but because the
judge is able to say that it is also the opinion that all
reasonable men would entertain of the question. If
there is doubt as to whether all reasonable men would
draw the same conclusion from the evidence, then the
question must be submitted to the 12 reasonable men
appointed by the Constitution to determine disputed or
doubtful questions of fact. The rule on the subject is
well stated and illustrated by Judge COOLEY in deliver-
ing the opinion of the court in *Detroit & Milwaukee R.
Co. v Van Steinburg,* 17 Mich 99, 118.' "

In applying this standard to the facts of the
instant case, we view the testimony in the light
most favorable to the plaintiff and draw the rea-
sonable inferences therefrom which are in his
favor. *Levesque v La Fortune,* 348 Mich 443; 83
NW2d 333 (1957); *McCullough v Ward Trucking
Co, supra.*

Plaintiff testified that he looked both ways and
saw no traffic as he started to cross Grand River.
He also testified he stopped and again looked both
ways when he reached the middle of the street. He

did not see any lights or hear any brakes or horn prior to being struck.

Mrs. Autrey testified she saw no lights other than taillights on the hit-run car. She saw no beams from its headlights.

These facts alone are sufficient to enable this case to go to the jury. A jury could have found that the hit-run car was traveling without lights, in violation of our motor vehicle code, and by so doing was negligently operated. The fact that taillights on a car are operable, does not mean that the headlights necessarily are in working order also. The rear brake lights also come on when the brakes are applied. This is so even if the headlights on the car are not on. The jury could have reasoned that the car's lights were in working order but not turned on. This would explain why the witness saw brake lights but no beams from the headlights.

In addition, there was testimony that the hit-run car may have left 34–35 feet of skid marks. This, however, was contradicted by the plaintiff and witness who both testified they heard no sound of brakes being applied. If the jurors chose to believe the car did indeed leave 34–35 feet of skid marks, they could have inferred that it was being negligently operated at excessive speed. If they chose to infer that no brakes were applied, they might infer that the driver was negligent in not maintaining his awareness of the area in front of him; and thus failed to keep his car under control at all times.

Reversed and remanded for a new trial. Costs to plaintiff.

T. G. KAVANAGH, WILLIAMS, and LEVIN, JJ., concurred with T. M. KAVANAGH, C. J.

T. E. BRENNAN, J.

## THE CASE

This action arises under MCLA 257.1112; MSA 9.2812, which provides as follows:

"Sec. 12. Where the death of or personal injury to any person is occasioned in this state by a motor vehicle but the identity of the motor vehicle and of the driver and owner thereof cannot be established, any person who would have a cause of action against the owner or driver in respect to the death or personal injury may bring an action against the secretary, either alone or as a codefendant with others alleged to be responsible for the death or personal injury. In any action commenced under this section, physical contact by the unidentified vehicle with the plaintiff or with a vehicle occupied by the plaintiff, is a condition precedent to such action."

At trial in the circuit court, a motion for directed verdict was granted at the close of plaintiff's proofs. Judgment of no cause for action was affirmed by a divided panel in the Court of Appeals.

## THE FACTS

In his brief on appeal to this Court, plaintiff-appellant sets forth a statement of facts, which is accepted by the defendant-appellee. That statement is as follows:

"This negligence action arises out of a hit-run automobile-pedestrian accident which occurred about 1:30 a.m. on January 12, 1967 on Grand River Avenue near Lesure in the City of Detroit. The driver of the automobile was never found and for this reason the Secretary of State is the defendant. (Act 198, Public Acts 1965, CL

'48, Paragraphs 257.1101*[sic]*-257.1131; MSA 9.2801–9.2831).

"Grand River is a wide, seven-lane artificially lighted, paved road, running in a northwesterly direction from downtown Detroit. Lesure runs generally north and south and ends at Grand River. The collision took place in a locality described as 'business'.

"Sidewalks are installed along each side of Grand River and Lesure. On the date of the accident the weather was clear, the road was dry and it was cold. No pedestrian cross-walk is provided at this intersection. Prior to the collision plaintiff, Roy Dodd, born August 10, 1909, had consumed two or three drinks at Snack's Bar which is located on the southerly side of Grand River at approximately at the point where Lesure would cross Grand River were it not a dead-end street. He left at the same time as Marie Autrey, a waitress at the bar. Mrs. Autrey, a widow and mother of two children, had some conversation with plaintiff at the front entrance of the bar, closed and locked the door, saw him walk from the bar and step off the curb; she then turned and proceeded toward her car in the parking lot. At this time she did not notice any traffic on Grand River. After she unlocked and opened the car door she heard a 'thud' and turned and saw Mr. Dodd up in the air. The car was still there but kept going. She then went over to plaintiff, returned to the bar to have the police called and went back and put her coat over him and waited for the police and ambulance to arrive. Plaintiff was not conscious and did not talk. His trousers were down around his ankles, his hat was off, and his glasses, which he had been wearing previously, were not on.

"Mrs. Autrey gave a statement to the police and showed them approximately where the accident took place. At the location, which was the second lane from the northerly curb, they found 34–35 feet of skid marks.

"She testified that when she heard the thud she turned and saw plaintiff up in the air over the left front fender. The automobile was in the second land from the northerly curb. She also testified that when Mr. Dodd left the bar he appeared to be walking and talking normally.

"Plaintiff testified that he had two or three drinks in
the bar, left at the same time as Mrs. Autrey, went to
the curb, looked, saw no traffic, and proceeded to the
middle of the street; he started crossing Grand River at
a point opposite the sidewalk of Lesure; when he ar-
rived at the middle of the street he then looked both
ways again, saw nothing and went on across. He had
crossed five lanes and was in the sixth lane when he
was struck. He did not hear any brakes or horn or see
any lights prior to being struck. He further testified
that his physical condition at the time was okay.

"Mrs. Autrey testified that when she saw. the car
after hearing the 'thud' she saw tail lights but did not
hear the sound of brakes screeching. She is aware that
tail lights come on when brakes are applied. She also
testified that the car was traveling at a speed of 25 or
over. The speed limit is 35 miles per hour. Additionally,
she .testified that she did not observe the car too long
after .striking Mr. Dodd because she was ·concerned for
him and was upset."

## THE ISSUE

This case presents, broadly considered, the typi-
cal issue .in a directed verdict situation. That is to
say, whether the evidence presented by the plain-
tiff made out a prima facie case of the negligence
of the operator of the vehicle belonging to John
Doe.

More specifically, however, we are called upon to
consider the extent of a plaintiff's burden of proof
in a hit-and-run situation, including the question
of whether the driver's failure to stop and identify
himself is itself a circumstance from which some
negligence on the part of the driver can be in-
ferred.

## DISCUSSION

The plaintiff contends that there is little in the

way of precedent in the situation presented by the facts in this case. He argues that prior to the adoption of the Motor Vehicle Accident Claims Act, there was no occasion for a plaintiff to bring an action against a hit-and-run motorist, since there would have been no identifiable defendant.

Plaintiff argues that in a typical negligence action, the plaintiff may, by calling the defendant as an adverse witness, establish facts which would support a showing of negligence. Plaintiff contends that he is at a disadvantage by reason of his inability to identify and summon the driver of the defendant's vehicle.

The defendant Secretary of State argues that actions against hit-and-run drivers are not without precedent, pointing out that uninsured motorist's coverage has been in existence in Michigan since 1965, by reason of MCLA 500.3010; MSA 24.13010. The Secretary points out that other states with similar statutes have had occasion to consider actions involving hit-and-run motorists, citing *Caudill v Nationwide Mutual Ins Co of Columbus, Ohio,* 264 NC 674, 681; 142 SE 2d 616, 621 (1965), and *In the Matter of Arbitration between Nationwide Mutual Ins Co v Willard Holbert,* 241 NYS2d 589, 592; 39 Misc 2d 782 (1963).

The Secretary proceeds to analyze the testimony presented on behalf of the plaintiff, pointing out that each of the facts elicited is inconclusive on the question of negligence by the hit-and-run motorist.

If this were not a hit-and-run situation, we would be constrained to agree with the Court of Appeals, which concluded as follows:

"A review of the record reveals that it can only be said that plaintiff was hit at night by a car in the sixth lane of a seven lane highway, and that the car was

traveling about 25 mph. The testimony does not support a reasonable inference that the car's headlights were not on. Thus, the trial court properly granted the defendants' motion for a directed verdict. There was no error depriving plaintiff of a substantial right."

There is, however, another fact which a jury could properly have considered and which supports an inference of negligence on the part of the hit-and-run motorist. That fact is the conceded proposition that the motor vehicle which struck the plaintiff did not stop after the accident. MCLA 257.617; MSA 9.2317 provides as follows:

"Sec. 617. (a) The driver of any vehicle who knows or who has reason to believe that he has been involved in an accident upon either public or private property, when such property is open to travel by the public, resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident and shall remain thereat until he has fulfilled the requirements of section 619. Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment in the county or municipal jail for not less than 30 days nor more than 1 year, or in the state prison for not less than 1 nor more than 5 years, or by fine of not less than $100.00 nor more than $5,000.00, or by both such fine and imprisonment.

"(c) The secretary of state shall suspend the operator's or chauffeur's license of the person so convicted as provided in section 319 of this act."

Even without the specific requirements of the foregoing statute, it would be safe to say that an ordinarily prudent person has an obligation to stop and render assistance to a fellow human being who has been injured in a collision with his motor

vehicle. It would be most unenlightened for the
law to countenance an advantage to the hit-and-
run driver arising out of his violation of a statu-
tory and common-law duty to stop. The failure to
stop is inconsistent with an assumption that the
hit-and-run driver was exercising due care at the
time of the collision. Failure to stop creates an
inference in the minds of reasonable people that
the driver does not wish to be identified and that
his wish to be unidentified stems from a fear of the
consequences of being known. This line of reason-
ing comports with the ordinary experiences of
people in their everyday lives.

Moreover, it has the authority of precedent in
the field of criminal law. In a criminal prosecution,
flight may be shown as evidence tending to prove
that the defendant was guilty.

Placing the proposition in a different context, let
us suppose that the witness, Mrs. Autrey, had
observed and recorded the license number of John
Doe's vehicle. Let us suppose further that Doe was
served with a summons, appeared, and defended in
this action. No one would argue in such a case
that Doe's failure to stop after the accident was
inadmissible on the ground that it was irrelevant.
Certainly, Doe would be free to explain his reasons
for not stopping, and perhaps rebut any inference
which might be drawn from an unexplained fail-
ure to stop, but certainly in the absence of ade-
quate explanation, the failure to stop would be
considered by the jury as evidence of culpability.

It is interesting to note that our statute MCLA
257.1112; MSA 9.2812 does not mention the word
negligence. It would appear, therefore, to encom-
pass actions based upon an intentional injury per-
petrated through the use of a motor vehicle. In
such a case, by analogy to the criminal case, flight

could be shown as tending to show the guilty state of mind of the driver. It would be incongruous to conclude that the plaintiff here has adequate and ample evidence on which to go to the jury upon a complaint alleging an intentional tort of assault and battery, but that such evidence is insufficient to support a claim of lessor wrongdoing founded upon negligence.

### HOLDING

We hold that in an action based upon MCLA 257.1112; MSA 9.2812 the fact that the motor vehicle did not stop after the accident is admissible as tending to show negligence on the part of the hit-and-run motorist, and, in the absence of other direct testimony bearing upon the negligence of the hit-and-run driver, is sufficient to create a question of fact upon the issue of negligence.

Cause is reversed and remanded to the circuit court for further proceedings in accordance with this opinion, with costs to the plaintiff.

SWAINSON and M. S. COLEMAN, JJ., concurred with T. E. BRENNAN, J.