ZEPPA v DIEBEL

1. APPEAL AND ERROR—VERDICT—DIRECTED VERDICT—FACTS—INFERENCES.

The Court of Appeals must view the facts in the light most favorable to the plaintiff and accord the plaintiff any reasonable inference to be drawn therefrom when reviewing a case in which a verdict was directed in favor of the defendant.

2. AUTOMOBILES—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—EVIDENCE—DIRECTED VERDICT.

A directed verdict in favor of a defendant was proper where the plaintiff, a pedestrian struck by an automobile driven by the defendant, was shown by testimony to have walked from behind another car across the street directly into the path of the defendant's car, and where no evidence was presented from which it could be inferred that the defendant was either speeding or inattentive; even if the defendant was in some way negligent, the plaintiff was herself guilty of negligence proximately contributing to the accident.

3. NEGLIGENCE—PEDESTRIANS—OBSERVATION—DUE CARE.

A pedestrian, before crossing a street, must (1) make proper observation as to approaching traffic, (2) form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances.

Appeal from Wayne, John R. Kirwin, J. Submitted Division 1 December 3, 1974, at Detroit. (Docket No. 18423.) Decided January 8, 1975.

Complaint by Enrico Zeppa and Luisa Zeppa

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 886.
[2] 57 Am Jur 2d, Negligence § 288.
[3] 57 Am Jur 2d, Negligence § 334.

against Susan C. Diebel and Erwin Diebel for damages for injuries suffered in an automobile accident. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Jack C. Chilingirian,* for plaintiffs.

*Rouse, Selby, Dickinson, Pike & Mourad* (by *Andrew J. Galsterer, Jr.),* for defendants.

Before: GILLIS, P. J., and V. J. BRENNAN and PETERSON,* JJ.

PETERSON, J. Plaintiffs sued to recover damages for injuries suffered when Mrs. Zeppa (hereinafter referred to as plaintiff), a pedestrian, was struck by the automobile of Erwin Diebel driven by Susan Diebel (who is referred to as the defendant). At the conclusion of plaintiff's proofs the court directed a verdict in favor of defendant, from which plaintiff appeals.

Not unmindful of the requirement that the facts be viewed in the light most favorable to plaintiff and that she be accorded any reasonable inference to be drawn therefrom,[1] we affirm. No reasonable person could conclude that plaintiff's injuries were proximately caused by any negligence other than her own.

The accident occurred in the city of Detroit. Plaintiff lived on the north side of Hass Street, where the accident happened, near the point where northbound Southfield ends at a "T" intersection with Hass. Paralleling Southfield are

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Dodd v Secretary of State,* 390 Mich 606; 213 NW2d 109 (1973), *Todd v Simonis,* 370 Mich 342; 121 NW2d 847 (1963), *Detroit & Milwaukee R Co v Van Steinberg,* 17 Mich 99 (1868).

Beech-Daly Road, a block to the west, and Evangeline, a block to the east.

At about midnight on February 20, 1970, plaintiff was brought home from work by a Mrs. Dobies, with whom she customarily rode. Mrs. Dobies, driving east on Hass stopped approximately opposite plaintiff's home at a point some twenty feet east of Southfield and about four feet from the south curb of Hass. The block between Southfield and Evangeline is a short one, 100 feet from street centerline to street centerline according to the investigating officer, perhaps as much as 200 feet according to defendant's estimate. Hass is a narrow residential street variously estimated at from four car widths to 40 feet in width.

As Mrs. Dobies' car turned onto Hass from Beech-Daly, a block west of Southfield, defendant was stopped on Hass at a stop sign at Evangeline, a block to the east of Southfield. At the same time, a car operated by Craig Forquer, northbound on Southfield, approached the dead-end at Hass and stopped responsive to a stop sign at the intersection. Forquer allowed the Dobies car to pass and then started to turn right, eastbound on Hass. When the Dobies car stopped, Forquer also stopped before completing his turn, leaving his car pointing in a northeasterly direction. Defendant was now approximately midway between Evangeline and Southfield approaching the two standing automobiles. The headlights on all three cars were turned on.

Plaintiff got out of the back seat of Mrs. Dobies' car, alighting on the right hand or curb side of the car, walked west beside the Dobies car and then, as the Dobies car began to move, turned north across Hass between the Dobies and Forquer cars and continued on into the path of defendant's car.

Defendant testified that while in mid-block and traveling about 20 miles per hour, she saw For-quer start around the corner from Southfield onto Hass. Thinking that he might pass the standing Dobies car, she slowed to about 15 miles per hour and moved closer to the north curb. As she reached Mrs. Dobies' car it began to move. She then saw plaintiff only a foot or two away from the left front of the car and walking north across the street at a fast pace. Plaintiff was wearing a dark coat, turned up so that she could not see her face and plaintiff did not look in defendant's direction. Defendant immediately applied her brakes but struck plaintiff with the front center of the car. Plaintiff had crossed about three quarters of the distance across the street in defendant's opinion.

Forquer testified that plaintiff left the Dobies car on the curb side, walked beside it towards his car and, as the Dobies car moved away, turned between the two cars and walked, without hesitation and without looking, directly into the path of defendant's car. He testified that defendant took about twenty feet to stop; that plaintiff walked within an arm's length of the front of his car; that defendant brought her car to stop so that it's front end was about to the front end of his car; and that he heard the screeching of brakes for maybe two or three seconds. The pavement was dry.

Plaintiff testified that she was wearing a dark brown coat; that the dome light in the Dobies car went on as she got out; that no cars were parked along Hass; that she didn't see any car on South-field; that she never saw defendant. Asked if she saw headlights "coming either from off of South-field or coming this way", she replied, "I think Southfield". Asked if she looked right or left, she

said that she did not remember. Asked if she looked right and left when crossing streets, she said "yes". And asked, "Do you *always* look to your right and left?" she again said, "yes".[2]

Plaintiff's theory was that defendant was guilty of a lack of observation and, on appeal, further urges that excessive speed by defendant might be inferred. The claim of inference of excessive speed is based solely on the testimony of witness Forquer that the duration of the brake screech was two to three seconds. Yet if that kind of weight is to be suggested for an estimate of time duration, it must be overridden by the testimony of the same disinterested witness that defendant's car was brought to a stop within twenty feet.

Plaintiff's argument that defendant failed to make an adequate observation seems to flow from the legal proposition that the driver of an automobile has a duty to see persons in the street,[3] that plaintiff was in the street and was struck, and that, therefore, defendant was inattentive. But plaintiff points to no evidence from which such an inference might arise. Plaintiff's own proofs place her as walking from behind the Dobies car directly into the path of defendant. Because of the angle at which the Forquer car stopped, there can be no inference that her presence was picked up or spotlighted from the beam of the Forquer car in time to permit defendant an opportunity to stop.

[2] When the question of looking that night was pursued, plaintiff repeated that she remembered nothing. Asked if it was a matter of remembering nothing or not remembering if she saw anything, she replied, "I don't know. I no got nothing to say". It should be added that plaintiff was of foreign birth and demonstrated some lack of English language proficiency.

[3] Citing *Thompson v Christian*, 342 Mich 463; 71 NW2d 67 (1955). But the Court there sustained a directed verdict in favor of the defendant in an action on behalf of a child who was struck while running in the street.

And the trial judge correctly noted that even had defendant been in some way negligent, plaintiff was herself guilty of negligence proximately contributing to the accident. If the jury was permitted to infer from her testimony that she always looked left and right, that she had in fact looked before starting across the street, it is not credible that she could have failed to see the headlights of defendant's oncoming car. Looking is only a part of the duty of care required of pedestrians and if it may be inferred that plaintiff did that much, it is clear that she did no more.

"Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances." *Malone v Vining,* 313 Mich 315, 321; 21 NW2d 144 (1946).

Affirmed. Costs to appellees.
All concurred.