HANNIE L. JONES, AS ADMINISTRATRIX *AD PROSEQUEN-DUM* OF THE ESTATE OF REUBEN O. JONES, DECEASED, PLAINTIFF-APPELLANT, v. JUNE STRELECKI, DIRECTOR OF THE DIVISION OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, DEFENDANT - RESPONDENT.

Argued May 24, 1967—Decided July 5, 1967.

Mr. *Angelo J. Falciani* argued the cause for appellant (*Messrs. Falciani, Cotton & Chell,* attorneys).

Mr. *John L. White* argued the cause for respondent (*Messrs. White and Simpson,* attorneys).

The opinion of the court was delivered by

FRANCIS, J. This is an automobile negligence death action. The suit was brought against the Director of the Division of Motor Vehicles of the State of New Jersey pursuant to *N. J. S.* 39:6–78, the Unsatisfied Claim and Judgment Fund Law, because the driver of the vehicle which caused the death is unknown. Following trial a jury returned a verdict for plaintiff in the amount of $20,000. Defendant's motion for a new trial was denied, but a *remittitur* of $12,000, reducing the judgment to $8,000, was accepted by plaintiff. On defendant's appeal, the Appellate Division found insufficient evidence of negligence to warrant submitting the issue to the jury for determination, set aside the verdict, and remanded the case for the entry of judgment for defendant. We granted plaintiff's petition for certification. 48 *N. J.* 116 (1966).

There were no eyewitnesses to the fatal accident. Most of the proof adduced came from a State Trooper who ap-

peared on the scene about 3 :55 A. M. on September 29, 1962, some short time after the mishap.

The accident occurred in Elk Township, Gloucester County, on the Glassboro-Centerton Road, called Buck Road, about three-tenths of a mile south of the Glassboro-Elk Township line. The area is rural. The road, which is straight and level for a considerable distance, is 20 feet wide with a 2-foot shoulder on each side. It has no artificial lighting. The roadway and the shoulders have a blacktop surface. There are no curbs or sidewalks for pedestrian travel. Beyond the 2-foot shoulders are dirt and grass. There is no intersecting street to the township line.

The night of the accident was clear and the roadway was dry. When the trooper arrived at the scene he found the body of the deceased, Reuben O. Jones, age 33 years, lying at an angle across the center line of the roadway, the head pointing toward the east. It was in a pool of blood. The body was "broken up ;" a bone was protruding from the left leg. He found the decedent's left shoe on the westerly shoulder 47′ 2″ north of the body; 48′ 8″ farther north he found a sizable piece of bone, obviously from the broken left leg. It too was on the westerly shoulder. Thus the bone was 95′ 10″ from the resting place of the body.

Further examination of the roadway in both directions revealed no skid marks or tire marks of any kind on the traveled surface or on the shoulders; nor did it disclose any debris or dirt spots which might indicate the point of impact.

The county coroner's certificate showed that the decedent had suffered a fractured pelvis, fractures of both femurs, internal injuries, ruptured intestine and internal hemorrhages. The defense proffered proof at the trial that a test of Jones' blood made at the request of the county coroner showed that he was intoxicated at the time of death. It was contended that such proof was material on the issue of contributory negligence as well as proximate cause of the accident. Since there was nothing to indicate any specific conduct or action on the part of Jones stemming from the intoxication which

could be said to have been related in cause to the contact between him and the unknown motor vehicle, the trial court declined to admit the proof.

We agree that the evidence of the culpable producing cause of the accident is meager. But in our judgment, viewing the circumstances in their totality and giving the plaintiff the benefit of all favorable inferences from them, as we must, factual issues are sufficiently raised as to whether Jones was struck by a motor vehicle, and as to the driver's negligence and decedent's contributory negligence, to require submission of the case to a jury for determination. Compare *Hamilton v. Althouse,* 115 *N. J. L.* 248 (*E. & A.* 1935); *Mursky v. Brody,* 13 *N. J. Misc.* 725, 181 *A.* 273 (*Sup. Ct.* 1935).

Here we have a straight, level roadway with nothing to obstruct the view ahead. A motorist driving along it would naturally be conscious of the absence of sidewalks, and thus chargeable with knowledge that pedestrians would walk on the narrow shoulders immediately adjacent to the limited 10-foot normal travel width of the roadway for each direction. Such circumstances, of course, demanded reasonably diligent use of his powers of observation. The Motor Vehicle Act required him to have headlights on his vehicle "when there is not sufficient light to render clearly discernible persons * * * on the highway at a distance of five hundred feet ahead." *N. J. S.* 39:3-46. If the vehicle has multiple-beam headlights, the high beam must be of such intensity as to reveal persons at a distance of at least 350 feet ahead. The low beam, which a jury could find that a reasonably prudent driver would not be using on a narrow road in a rural area, must be of sufficient intensity to reveal persons at a distance of 100 feet ahead. *N. J. S.* 39:3-58. The word "ahead" in this section certainly would include the 2-foot shoulders of a roadway having only a 10-foot travel width for cars moving in each direction.

The testimony of the trooper that there were no tire or skid marks on the road in the vicinity of the body, plus the fact

that there was a distance of over 95 feet from the fragment of leg bone to the body, justifies an inference that the driver never saw Jones before striking him or else saw him when it was too late to avoid him, either by application of brakes or otherwise. If he did not see Jones a jury might find that he was not paying reasonable attention to the road ahead, or that his headlights were not proper or not functioning properly. Moreover, having in mind the location of the left leg bone on the shoulder of the road, the left shoe 47 feet farther on, and the body in the center of the road 48 feet from the shoe, a further inference would be justified that Jones was walking on the shoulder when struck by the car, which veered to the left, toward the center line, just as it struck him.

A jury might find also that the above facts and possible inferences, especially the fact that decedent's left leg was so badly shattered, give rise to another inference, *i. e.*, that Jones was walking on the shoulder of the side of the road for traffic moving in the direction in which he was proceeding. This would be a violation of the Motor Vehicle Act, which provides that in the absence of sidewalks pedestrians should walk facing oncoming traffic, *N. J. S.* 39:4–34. But such fact, if found, would not of itself warrant a determination as a matter of law either of contributory negligence or that decedent's own conduct was the proximate cause of the accident. *Hamilton v. Althouse, supra; Mursky v. Brody, supra.*

Another important circumstance is present which, added to the other factors cited, provides substantial support for the view that a jury must decide the issues here. *N. J. S.* 39:4–129 requires a motorist, who is knowingly involved in an accident resulting in injury to or death of a person, to stop immediately and render reasonable assistance, "including the carrying of that person to a hospital or a physician for medical or surgical treatment," if it is apparent that treatment is necessary or if it is requested by the injured person. It also requires him to identify himself and exhibit his driver's license and owner's certificate to the injured person or to any police officer or witness to the accident. *N. J. S.* 39:4–129.

The nature of the injuries suffered by Jones and the probable course of travel of the vehicle make the driver's knowledge that he had been in an accident, and one involving the front of his car, an almost irresistible conclusion. Yet he did not stop.

■ The purpose of this section of the Motor Vehicle Act is to prevent a driver from evading his responsibility by escaping from the scene. *State v. Gill,* 47 *N. J.* 441, 443 (1966). More specifically, in the context of this case, the failure to stop permits an inference of consciousness of lack of care and of liability for the occurrence. For example in *Vuillemot v. August J. Claverie & Co.,* 12 *La. App.* 236, 125 *So.* 168, 169–170 (*Ct. App.* 1929), the court said:

"Then, too, since the accident was caused by a truck and since no truck stopped, either the driver of the truck which caused it was not keeping a proper lookout, or he drove away in an effort to avoid being caught. If he had been keeping a proper lookout, surely he would have noticed that the truck struck the young lady with its front fender. If he was not keeping a proper lookout, he was negligent. If he did know that he struck the young lady and did not stop, then his action in attempting to escape was tantamount to an admission of guilt. We have therefore come to the conclusion that, although the evidence as to the facts of the accident is very meager, there is sufficient in the record to warrant the finding that the young lady was killed by a truck and that the driver of the truck was at fault."

To like effect see, *Harrington v. Sharff,* 305 *F.* 2d 333, 338 (2 *Cir.* 1962) ; *Brooks v. E. J. Willig Truck Transp. Co.,* 40 *Cal.* 2d 669, 255 *P.* 2d 802 (*Sup. Ct.* 1953) ; *Kotler v. Lalley,* 112 *Conn.* 86, 151 *A.* 433 (*Sup. Ct. Err.* 1930) ; *Langenstein v. Reynaud,* 13 *La. App.* 272, 127 *So.* 764 (*Ct. App.* 1930).

■ The final problem to be disposed of relates to the admissibility of the evidence of decedent's intoxication at the time of his death. Since the proof was excluded, there is not available for consideration now the degree of intoxication and the probable effect, if any, upon the conduct and capacity for locomotion of an ordinary person suffering from such degree of intoxication. And, although no evidence was adduced at the trial of the actual conduct of the deceased just before he

was struck, in our view the intoxication aspect of the case is a proper matter to be developed on the issues of proximate cause and contributory negligence. The jury will then have before it the full circumstances to the extent that they are known and available to aid it in assessing responsibility for the fatal accident.

For the reasons stated the judgment of the Appellate Division is reversed, and the cause is remanded for retrial of all issues.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.