JOHNSON v SECRETARY OF STATE

Docket No. 60261. Argued October 4, 1978 (Calendar No. 3).—Decided June 25, 1979.

William P. Johnson, administrator of the estate of Mamie J. Johnson, deceased, brought an action for wrongful death against the Secretary of State under the Motor Vehicle Accident Claims Act. The Wayne Circuit Court, Victor J. Baum, J., granted the defendant a directed verdict of no cause of action. It was not directly established at trial how Mamie Johnson was injured, whether as she walked across the street or while she was riding as a passenger in an automobile. No witnesses came forward, other than the man who apparently found Mamie Johnson's body whose testimony was not presented at trial, and no driver of an automobile that may have caused the injuries was identified. The trial court ruled that there was sufficient

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Expert and Opinion Evidence §§ 111-113.
Admissibility of opinion evidence as to cause of death, disease, or injury. 66 ALR2d 1082.
[2, 4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 249-251.
Sufficiency of compliance with requirement of criminal "hit and run" statute that motorist identify himself. 48 ALR3d 685.
[3] 29 Am Jur 2d, Evidence §§ 123-126.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 249-251.
29 Am Jur 2d, Evidence §§ 177, 178.
Sufficiency of compliance with requirement of criminal "hit and run" statute that motorist identify himself. 48 ALR3d 685.
[6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 249-251.
29 Am Jur 2d, Evidence §§ 123-126, 177, 178.
Sufficiency of compliance with requirement of criminal "hit and run" statute that motorist identify himself. 48 ALR3d 685.
[7] 29 Am Jur 2d, Evidence § 126.
[8, 9] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 301, 302.
[10] 57 Am Jur 2d, Negligence §§ 261, 262.
[11, 13, 17] 8 Am Jur 2d, Automobiles and Highway Traffic § 686.
[12] 7 Am Jur 2d, Automobiles and Highway Traffic § 336.
[14] 29 Am Jur 2d, Evidence §§ 160, 161.
[15] 5 Am Jur 2d, Appeal and Error § 608.
[16] 57 Am Jur 2d, Negligence § 7.

evidence to find that Mamie Johnson was struck by an automobile but that evidence of flight by the driver, in violation of the statutory duty to stop and give information and aid, was not alone sufficient to permit an inference that the fleeing driver was negligent. The Court of Appeals, J. H. Gillis, P.J., and Bashara and Mahinske, JJ., affirmed in an unpublished per curiam opinion (Docket No. 29948). Plaintiff appeals. *Held:*

The Court can agree that 1) flight from an accident scene, taken alone, does not prove negligence, 2) violation of the statutory duties to stop, give information and aid, and to make a report, is not civilly actionable, absent proof of resultant aggravation of injury or death, and 3) the mere happening of an accident is not evidence of negligence, and in an action against the Secretary of State, as in one against a hit-run driver if he is identified and can be sued, the plaintiff has the burden of proving negligence, without reaching the conclusion that the burden of producing evidence should be allocated 1) as if the unidentified driver had not violated those statutory duties, 2) as if the violation of those duties had not resulted in a loss of evidence concerning the circumstances of the accident, a loss that plaintiff cannot overcome because the victim is unable to testify and no other witness provides evidence of the circumstances of the accident, and 3) as if the state had not declared a public policy of compensating the victims of unidentified drivers and the defendant Secretary of State were not obliged to do so.

1. There was evidence tending to show that Mamie Johnson was killed as a result of being struck by a vehicle or of being involved in an automobile accident. The medical examiner testified that he was of the opinion that the injuries Mamie Johnson suffered were characteristic of an automobile accident. What he learned in his examination of the body and the sum of his experience regarding the meaning of his observations in the examination of thousands of bodies over a ten-year period are facts, and the Court of Appeals erred in concluding that his opinion was an inference drawn without facts.

2. It was not established, by either the medical examiner's testimony or other evidence, whether Mamie Johnson's injuries were inflicted as she walked across the street or while she was riding as a passenger in an automobile. If she were a passenger in an automobile, then her body was removed from the automobile and left to be found by others. If she was struck while she was walking across the street with sufficient force to cause serious injury or death, the jury could properly conclude that the driver had reason to believe that he had been involved in

an injury accident. In either circumstance there was "physical contact by the unidentified vehicle" with Mamie Johnson, and the driver of the unidentified vehicle was obliged by statute to stop and give his name, address, and registration number, to render reasonable assistance in securing medical aid or transportation for the victim, and to make a report to police authorities.

3. There is no need to reconcile decisions on flight as evidence in criminal and civil cases or, indeed, to determine whether flight alone is probative of consciousness of wrongdoing. Since an automobile driver may not lawfully leave the scene of an automobile accident, flight does not stand alone. One who flees from the scene of an accident violates the statutory obligations to stop, give information and aid, and to make a report, and thereby subjects himself to the imposition of a severe prison term. It is reasonable, therefore, to draw inferences from the flight of a driver involved in an automobile accident that might not be appropriate in another case. To be sure, it is possible that for personal reasons, innocent as far as the law is concerned, a driver may wish to avoid identifying himself, but because violation of the statutory duties may subject a fleeing driver to severe penalty and it is unlikely, weighing the probabilities, that there would be a reason unrelated to culpability in the accident that would outweigh the risk of that penalty, it is reasonable to draw the inference that he fled to avoid revealing such culpability.

4. The action of the driver in concealing his identity and in failing to provide information about the circumstances of the accident, in violation of his statutory duties, is akin to the deliberate destruction of or a failure to produce at trial evidence within a party's control. In such a case a presumption arises that the evidence, if produced, would operate against him. On the same principle, an inference should arise, where the evidentiary gap is not closed by other evidence of the circumstances of the accident, that if the driver had complied with his statutory duties the evidence that would have been produced would operate against him. The inference of culpability flowing from flight should be coupled with the adverse inference which arises from destruction or nonproduction of evidence to create a presumption of negligence that relieves the plaintiff of the burden of producing evidence of the circumstances of the accident in those cases where the loss of such evidence may properly be attributable to the driver's breach of his statutory duties and the plaintiff is not otherwise able to produce evidence of such circumstances. The presumption is, of

course, rebuttable; the inference of negligence is mandatory only in the absence of evidence tending to prove due care.

5. If the victim or other witnesses can provide information concerning the circumstances of the accident, the driver's failure to stop and give information may not then result in a loss of evidence preventing the plaintiff from producing evidence of those circumstances. The inference drawn from the evidence of flight can be weighed with the circumstances of the accident as one of the factors in deciding whether the driver was negligent. A fair allocation of the burden of production of evidence does not then call for an evidentiary presumption. Such a presumption should, however, arise in the atypical case where, as here, the circumstances of the accident are unknown because the victim is unable to testify, there were no known witnesses to the accident, the driver is unidentified and unsuable, and his failure to comply with his statutory obligations caused a loss of evidence which compliance would have provided.

6. The presumption is fair in that it arises where the driver's breach of statutory duties results in a loss of evidence that the plaintiff cannot otherwise provide. It is in accord with the probabilities as it is unlikely that a non-culpable driver would subject himself to a prison term on a hit-run charge. It serves the special policy considerations of compensating the victims of unidentified hit-run drivers implicit in the Motor Vehicle Accident Claims Act.

7. The Motor Vehicle Accident Claims Act is remedial. One of its purposes is to provide a remedy to the victim of a hit-run accident. The unwitnessed fatal accident is a likely cause for claim under the statute. If the accident is witnessed or the victim survives, the driver is more likely to be identified. It would be incongruous if the very circumstance which makes the plaintiff's case appropriate for recovery from the accident claims fund should operate to preclude recovery.

8. The purposes of the statute requiring a driver to stop and give information and aid and to make a report to police and of the statute providing a source of recovery for injuries caused by a hit-run driver support the inference of negligence derived from flight and noncompliance with such statutory obligations.

Reversed and remanded for a new trial.

Justice Ryan, joined by Chief Justice Coleman, dissented. He wrote:

1. The legislative purpose of the statutory cause of action in the Motor Vehicle Accident Claims Act is that an injury or

death suffered in an alleged hit-and-run accident would be compensable from the Motor Vehicle Accident Claims Fund only when the plaintiff sustains the burden of proof on his cause of action.

2. The driver of a motor vehicle involved in an accident who fails to stop and identify himself and render aid or assistance to a person injured as a result of the accident is criminally liable. Ordinarily the violation of a statutory duty constitutes negligence per se, but the failure to stop is a violation which occurs *after* the accident and necessarily subsequent to the alleged negligent conduct which causes the accident. Consequently, that violation of the statute cannot constitute negligence per se proximately contributing to the injury or death of a person involved in such an accident in the absence of proof that the failure to stop and give information and aid was a cause of further injury or of death. Since, in this case, there is no claim or proof of further or aggravated injury or of death, the unknown driver's violation of the statutory duty does not constitute negligence per se with respect to the death of plaintiff's decedent.

3. The plaintiff relies upon the evidence of flight to sustain the burden of proof as to the negligence of the hit-and-run driver. Flight from the scene of a tragedy may be quite as consistent with innocence as with guilt. One who in self-defense kills or maims another may through ignorance of the law or through panic flee from the scene of his act, and yet be perfectly innocent. It would be a dangerous rule which would permit the jury to consider flight as substantive evidence of guilt. Consequently, no inference or presumption of guilt is raised by evidence of flight *alone.* While flight is some evidence tending to prove that the fleeing person believes himself responsible for the mishap, caution must be exercised by the trial judge to prevent the jury from reaching a verdict based on that factor alone.

4. When a person is struck by an automobile under circumstances that suggest to the reasonable person that the accident might have been avoided but for some amount of blameworthy conduct on the part of the driver, an inference of negligence may well arise upon evidence of the driver's flight; the failure to stop is inconsistent with an assumption that the hit-and-run driver was exercising due care at the time of the collision. However, in the cases which discuss such an inference there was also adduced substantial circumstantial evidence concerning the cause of the impact. The width, location, direction and surface of the roadway where the accident occurred, the

weather conditions and time of day of the accident, and the location and position of the injured person are all matters of circumstantial evidence of the vehicle's operation and speed, the driver's ability to have seen and avoided the defendant, and the pedestrian's probable course and conduct prior to the accident.

5. Needless confusion has evolved from the inexact use of the term "inference" to describe the probative value of evidence of flight. The drawing of permissible inferences in the judicial fact-finding process is nothing more than the application of proposals of logic or rationalization in order to make certain deductions from known facts. Unlike a *presumption,* which arises from the high degree of probative or inferential value which flows from a particular set of basic facts, an *inference* is not a rule of law and is simply descriptive of the process of logic which is employed in reaching conclusions from established facts in evidence.

6. On review of a grant of motion for directed verdict, the question is whether the plaintiff produced sufficient evidence to go to a jury on a material question of fact which, if determined in plaintiff's favor, would entitle him to a judgment. While variously stated by different courts, the measure of evidence sufficient to make a question of fact for the jury is something less than a preponderance of evidence and something more than a mere scintilla of evidence. Submission by the plaintiff of merely some evidence will not withstand a motion for directed verdict where the evidence produced is insufficient to allow a jury to draw reasonable inferences as to the defendant's alleged negligent conduct.

7. The evidence adduced by the plaintiff on the liability issue in this case consisted solely of proof of the fact of an auto accident plus flight by the driver. The testimony of the medical examiner, read in a light most favorable to the plaintiff, establishes only that the deceased was involved in an automobile accident. The mere happening of an accident, however, is not itself evidence of negligence. In order to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts, negligence must be established by direct or circumstantial evidence which gives rise to an inference that a cause of the accident was the defendant's carelessness. Conspicuously lacking in plaintiff's proofs is any circumstantial evidence tending to show where the body of the deceased was found, the road and weather conditions, or any other factors probative of negligence causing the impact. The

plaintiff has failed to establish a prima facie case of negligence warranting submission to the jury of any factual issue.

OPINION OF THE COURT

1. AUTOMOBILES — NEGLIGENCE — EXPERT WITNESSES — OPINION.

Testimony by an expert witness that, in his opinion, a decedent's injuries were caused by an automobile accident was factually supported where the expert witness, an assistant county medical examiner, had examined thousands of bodies over a ten-year period; he made a careful examination of the decedent's body and described in detail the nature of the injuries; and he formed an opinion, based on the examination and on his experience from other examinations, that the injuries were characteristic of an automobile accident and that he did not remember any case like it except an automobile accident.

2. AUTOMOBILES — NEGLIGENCE — DUTY TO STOP — UNIDENTIFIED DRIVER.

An unidentified car driven by a hit-and-run driver had physical contact with a decedent and the driver was obliged by statute to give his name, address and registration number, and to render reasonable assistance in securing aid or transportation where there was sufficient medical evidence from which the jury could find that the decedent had been struck by an automobile, and if she had been a passenger in another automobile when she was hit, then her body was removed from the automobile and left to be found by other persons, or if she was struck walking across the street with sufficient force to cause her death, that the unidentified driver had reasonable cause to believe that he had been involved in an accident resulting in injuries to or death of a person (MCL 257.617, 257.619; MSA 9.2317, 9.2319).

3. EVIDENCE — PRODUCTION — BURDEN.

The burden of producing evidence is not invariably allocated to the pleader of the fact to be proved, but may be otherwise allocated by the Legislature or judicial decision based, among other factors, on an estimate of the probabilities, fairness, and special policy considerations; similar concerns may justify the creation, judicially or by law, of a presumption to aid the party who has the burden of production.

4. AUTOMOBILES — NEGLIGENCE — EVIDENCE — FLIGHT — INFERENCES.

It is reasonable to draw the inference from evidence of flight by a hit-and-run driver that he fled to avoid revealing his culpability

in the accident; because violation of the statutory duty to identify himself and render aid may subject the driver to a severe penalty, it is unlikely that he would have a reason unrelated to his culpability in the accident that would outweigh the risk of that penalty (MCL 257.617, 257.619; MSA 9.2317, 9.2319).

5. AUTOMOBILES — EVIDENCE — FLIGHT.

The action of a hit-and-run driver in concealing his identity and in failing to provide information about the circumstances of the accident, in violation of his statutory duties, is akin to deliberate destruction of or a failure to produce at trial evidence within a party's control, and should give rise to an inference, where the evidentiary gap is not closed by other evidence of the circumstances of the accident, that if the driver had complied with his statutory duties the evidence that would have been produced would operate against him.

6. AUTOMOBILES — NEGLIGENCE — EVIDENCE — FLIGHT — PRESUMPTIONS.

The inference of culpability flowing from the willingness of a hit-and-run driver to incur the severe penalties which attach to noncompliance with the statutory duties to stop, give information and aid, and to make a report, should be coupled with the adverse inference which arises from destruction or nonproduction of evidence to create a presumption of negligence that relieves the plaintiff of the burden of producing evidence of the circumstances of the accident in those cases where the loss of such evidence may properly be attributable to the driver's breach of his statutory duties and the plaintiff is not otherwise able to produce evidence of such circumstances (MCL 257.617, 257.619, 257.622, 257.1112; MSA 9.2317, 9.2319, 9.2322, 9.2812).

7. EVIDENCE — PRODUCTION — PRESUMPTIONS.

A presumption eases the proponent's burden of production on the ultimate fact and allows a meritorious case to be established on proof of facts which justify an inference of the ultimate fact; if the trier of fact finds the fact which supports the presumption, the ultimate fact must be found in the absence of evidence to the contrary, but if contrary evidence is offered, the trier is free to, but not required to, infer the existence of the ultimate fact.

8. AUTOMOBILES — NEGLIGENCE — ACCIDENT CLAIMS ACT — HIT-AND-RUN ACCIDENT.

One of the purposes of the Motor Vehicle Accident Claims Act is to provide a remedy to the victim of an unidentified hit-and-run

driver; the unwitnessed fatal accident is a likely cause for claim under the statute, and it would be incongruous if the very circumstance which makes the case appropriate for recovery from the accident claims fund should operate to preclude recovery because of the lack of evidence for the plaintiff's case.

DISSENTING OPINION BY RYAN, J.

9. AUTOMOBILES — NEGLIGENCE — MOTOR VEHICLE ACCIDENT CLAIMS ACT — LEGISLATIVE PURPOSE.

*The legislative purpose of the statutory cause of action in the Motor Vehicle Accident Claims Act is that an injury or death suffered in an alleged hit-and-run accident would be compensable from the Motor Vehicle Accident Claims Fund only where the plaintiff sustains the burden of proof on his cause of action (MCL 257.1112, 257.1116; MSA 9.2812, 9.2816).*

10. NEGLIGENCE — STATUTORY DUTY — PROXIMATE CAUSE.

*The violation of a statutory duty ordinarily constitutes negligence per se; however, in order to sustain a verdict for the plaintiff the violation must have been a proximate cause of the plaintiff's injury.*

11. AUTOMOBILES — NEGLIGENCE — DUTY TO STOP — UNIDENTIFIED DRIVER.

*An unknown driver's violation of the statutory duty to stop and give information and render assistance to persons injured in an automobile accident does not constitute negligence per se with respect to the death of a person where there is no claim or proof of further or aggravated injury or of death caused by the driver's failure to stop (MCL 257.617, 257.619; MSA 9.2317; 9.2319).*

12. AUTOMOBILES — NEGLIGENCE — DUTY TO STOP — INFERENCES.

*No inference or presumption of a driver's responsibility for an automobile accident is raised by evidence of flight alone because flight from the scene of a tragedy may be quite as consistent with innocence as with guilt; while flight from the scene of an accident is some evidence tending to prove that the fleeing person believes himself responsible for the mishap, caution must be exercised by the trial judge to prevent the jury from reaching a verdict based on that factor alone.*

13. AUTOMOBILES — NEGLIGENCE — DUTY TO STOP — INFERENCES.

*An inference of negligence may arise upon evidence of the flight of the driver of an automobile where a person is struck by the*

automobile under circumstances that suggest to the reasonable person that the accident might have been avoided but for some amount of blameworthy conduct on the part of the driver.

14. EVIDENCE — PRESUMPTIONS — INFERENCES — WORDS AND PHRASES.

The drawing of permissible inferences in the judicial fact-finding process is nothing more than the application of proposals of logic or rationalization in order to make certain deductions from known facts; unlike a presumption, which arises from the high degree of probative or inferential value which flows from a particular set of basic facts, an inference is not a rule of law and is simply descriptive of the process of logic which is employed in reaching conclusions from established facts in evidence.

15. NEGLIGENCE — DIRECTED VERDICT — EVIDENCE — SUFFICIENCY.

The question on review of a grant of a motion for a directed verdict of no cause of action is whether the plaintiff produced sufficient evidence to go to a jury on a material question of fact which, if determined in the plaintiff's favor, would entitle him to a judgment.

16. NEGLIGENCE — DIRECTED VERDICT — EVIDENCE — SUFFICIENCY.

The measure of evidence sufficient to make a question of fact for the jury is something less than a preponderance of evidence and something more than a mere scintilla of evidence; submission by the plaintiff of merely some evidence will not withstand a motion for directed verdict where the evidence produced is insufficient to allow a jury to draw reasonable inferences as to the defendant's alleged negligent conduct.

17. AUTOMOBILES — NEGLIGENCE — DUTY TO STOP — UNIDENTIFIED DRIVER — QUESTION OF FACT — EVIDENCE — SUFFICIENCY.

The plaintiff failed to establish a prima facie case of negligence under the Motor Vehicle Accident Claims Act warranting submission to the jury of any factual issue where the evidence adduced by the plaintiff on the liability issue consisted solely of proof of an automobile accident plus the subsequent flight of the unknown driver, and conspicuously lacked any circumstantial evidence tending to show where the body of the deceased victim was found, the road and weather conditions, or any other factors probative of negligence causing the impact (MCL 257.1112; MSA 9.2812).

*Posner, Posner & Posner* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Regina Ann King,* Assistants Attorney General, for defendants.

LEVIN, J. *(to reverse).* Plaintiff, administrator of the estate of Mamie Jean Johnson, commenced this action for wrongful death against the Secretary of State pursuant to the unidentified owner/driver provision of the Motor Vehicle Accident Claims Act.[1]

We granted leave to appeal to decide whether, in an action based upon that act, evidence of the unidentified driver's flight from the scene of an accident, in violation of the statutory duties to stop, give information and aid, and to make a report,[2] should give rise to a presumption of the

---

[1] "Where the death of or personal injury to any person is occasioned in this state by a motor vehicle but the identity of the motor vehicle and of the driver and owner thereof cannot be established, any person who would have a cause of action against the owner or driver in respect to the death or personal injury may bring an action against the secretary, either alone or as a codefendant with others alleged to be responsible for the death or personal injury. In any action commenced under this section, physical contact by the unidentified vehicle with the plaintiff or with a vehicle occupied by the plaintiff, is a condition precedent to such action." MCL 257.1112; MSA 9.2812.

The act applies to accidents occurring November 1, 1965 through January 1, 1976. MCL 257.1131; MSA 9.2831; MCL 257.1133; MSA 9.2833. Mamie Johnson died January 7, 1972.

The no-fault automobile liability act, effective October 1, 1973, provides that a person may obtain personal protection insurance benefits through an assigned claims plan if no personal protection insurance applicable to a motor-vehicle caused accidental bodily injury can be identified.

[2] Section 617 of the Michigan Vehicle Code requires the driver to stop and to fulfill the requirements of § 619:

"(a) The driver of any vehicle who knows or who has reason to believe that he has been involved in an accident upon either public or private property, when such property is open to travel by the public, resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident and shall remain thereat until he has fulfilled the requirements of section 619. Every such stop shall be made without obstructing traffic more than is necessary.

"(b) Any person failing to stop or to comply with said requirements

driver's negligence. The trial judge held that evidence of flight was not probative of the driver's negligence and directed a verdict for the defendant at the conclusion of plaintiff's proofs. The Court of Appeals affirmed.

One can agree with our colleagues that

i) flight from an accident scene, taken alone, does not prove negligence,

---

under such circumstances shall upon conviction be punished by imprisonment in the county or municipal jail for not less than 30 days nor more than 1 year, or in the state prison for not less than 1 nor more than 5 years, or by fine of not less than $100.00 nor more than $5,000.00, or by both such fine and imprisonment." MCL 257.617; MSA 9.2317.

Section 617 was amended by 1975 PA 170 to, among other things, reduce the penalty to imprisonment for not more than 2 years, or a fine of not more than $2,000 or both.

Section 619 requires the driver to give his name, address and registration number and to render to any person injured reasonable assistance, including aid or transportation:

"The driver of any vehicle who knows or who has reason to believe that he has been involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving, also the name and address of the owner, and exhibit his operator's or chauffeur's license to the person struck or the driver or occupants of any vehicle collided with and shall render to any person injured in such accident reasonable assistance in securing medical aid or transportation of injured person or persons." MCL 257.619; MSA 9.2319.

Section 622 requires the driver to report the accident forthwith at a police station or to a police officer. The statute provides that the investigating officer shall prepare and complete a report in full on forms supplied by the Director of the State Police:

"The driver of every motor vehicle involved in an accident resulting in injury or death of any person or total damage to all property to an apparent extent of $200.00 or more shall forthwith report such accident to the nearest or most convenient police station or police officer. The officer receiving such report or his commanding officer shall forthwith forward each individual report to the director of state police on forms prescribed by him which shall be completed in full by the investigating officer. The director of state police shall analyze each report relative to the cause of the reported accident and shall prepare for public use the information compiled from the reports. A copy of the report required under sections 621 and 622 of this act shall be retained for at least 3 years at the local police or sheriff's department or local state police post making the report." MCL 257.622; MSA 9.2322.

ii) violation of the statutory duties to stop, give information and aid, and to make a report, is not civilly actionable, absent proof of resultant aggravation of injury or death, and

iii) the mere happening of an accident is not evidence of negligence, and in an action against the Secretary of State, as in one against a hit-run driver if he is identified and can be sued, the plaintiff has the burden of proving negligence,

without agreeing with their conclusion that the burden of producing evidence should be allocated

i) as if the unidentified driver had not violated those statutory duties,

ii) as if the violation of those duties had not resulted in a loss of evidence concerning the circumstances of the accident, a loss that plaintiff cannot overcome because the victim is unable to testify and no other witness provides evidence of the circumstances of the accident, and

iii) as if the state had not declared a public policy of compensating the victims of unidentified drivers and the defendant Secretary of State were not obliged to do so.

The burden of producing evidence is not invariably allocated to the pleader of the fact to be proved. That burden may be otherwise allocated by the Legislature or judicial decision based, among other factors, on an estimate of the probabilities, fairness and special policy considerations, and similar concerns may justify the creation, judicially or by law, of a presumption to aid the party who has the burden of production.[3]

The action of the driver in concealing his identity and in failing to provide information about the circumstances of the accident, in violation of his statutory duties, is akin to the deliberate destruc-

---

[3] McCormick, Evidence (2d ed), §§ 338, 343; pp 788, 806.

tion of or a failure to produce at trial evidence within a party's control. In such a case a presumption arises that the evidence, if produced, "would operate against him; and every intendment will be in favor of the opposite party".[4] On the same principle, an inference should arise, where the evidentiary gap is not closed by other evidence of the circumstances of the accident, that if the driver had complied with his statutory duties the evidence that would have been produced "would operate against him". That inference, together with the inference of consciousness of wrongdoing which may be drawn from flight when there is a statutory duty to remain at the scene, should, in our opinion, give rise to a rebuttable presumption that the driver was at fault, and a prima facie case sufficient to avoid a directed verdict at the close of plaintiff's proofs.

If the victim or other witnesses can provide information concerning the circumstances of the accident, the driver's failure to stop and give information may not then result in a loss of evidence preventing the plaintiff from producing evidence of those circumstances. The inference drawn from the evidence of flight can be weighed with the circumstances of the accident as one of the factors in deciding whether the driver was negligent. A fair allocation of the burden of production of evidence does not then call for an evidentiary presumption.

Such a presumption should, however, arise in the atypical case where, as here, the circumstances of the accident are unknown because the victim is

---

[4] *Brandt v C F Smith & Co,* 242 Mich 217, 222; 218 NW 803 (1928); similarly, see *Fontana v Ford Motor Co,* 278 Mich 199, 203-204; 270 NW 266 (1936); *Griggs v Saginaw & F R Co,* 196 Mich 258, 265-266; 162 NW 960 (1917); *Leeds v Masha,* 328 Mich 137, 140; 43 NW2d 92 (1950); *Long v Earle,* 277 Mich 505, 516; 269 NW 577 (1936).

unable to testify, there were no known witnesses to the accident, the driver is unidentified and unsuable and his failure to comply with his statutory obligations caused a loss of evidence which compliance would have provided.

The presumption is fair in that it arises where the driver's breach of statutory duties results in a loss of evidence that the plaintiff cannot otherwise provide. It is in accord with the probabilities as it is unlikely that a non-culpable driver would subject himself to a prison term on a hit-run charge. It serves the special policy considerations of compensating the victims of unidentified hit-run drivers implicit in the Motor Vehicle Accident Claims Act.

I

There was no evidence substantiating plaintiff's allegation that Mamie Johnson was killed while walking across a street, although there was evidence tending to show that she was killed as a result of being struck by a vehicle or of being involved in an automobile accident.

Mamie Johnson's body was apparently found by Hubert Ingram and transported to a hospital. An attempt was made to depose Ingram at a time when he was in the Wayne County Jail. He refused to cooperate and no effort was made to compel his testimony. No other witnesses came forward and no driver of an automobile that may have caused the injuries was identified.

An assistant Wayne County medical examiner described in detail the nature of the injuries— laceration of the head, contusions of the scalp, abrasions on both knees, abrasions on back, fractured ribs, both lungs torn, liver lacerated, bleed-

ing in abdominal cavity.[5] He concluded that her death was the result of an automobile accident: "[T]he injuries that I see in this case are such that are seen by me and my colleagues in the cases of car accidents * * *. [T]his injury that I see here is very characteristic to the automobile accident." He did not remember any case "like it" except an automobile accident.

The trial judge said that the evidence was sufficient for the jury to find that Mamie Johnson was struck by an automobile but that evidence of flight was not alone sufficient to permit an inference that the fleeing driver was negligent. The Court of Appeals said that the medical examiner's opinion was an inference drawn without facts.

We all agree with the judge that there was evidence that Mamie Johnson's death resulted from an automobile accident. The Court of Appeals erred in concluding that the medical examiner's opinion was not factually supported. The medical examiner, a physician, had examined thousands of bodies over a ten-year period. He testified that he had made a careful examination of Mamie Johnson's body. What he learned in that examination and the sum of his experience from other examinations are facts. He was able to form an opinion, based on those facts, that Mamie Johnson's injuries were caused by an automobile accident. His opinion that her injuries were characteristic of an automobile accident was factually supported by what he observed and his experience regarding the meaning of those observations.

A more difficult question is whether it is reasonable to infer that Mamie Johnson's death was caused by the fleeing driver's negligence.

It was not shown whether Mamie Johnson's

---

[5] He said that she had been drinking; blood alcohol was .11.

injuries were inflicted when she was struck by an automobile or while riding as a passenger in an automobile. In either circumstance, the driver of an automobile failed to provide statutorily required aid, assistance and information. If she were a passenger in an automobile, she must have been removed from the automobile and left to be found by others. If she was struck with sufficient force to cause serious injury or death, the jury could properly conclude that the driver knew that he had been involved in an injury accident. There was, in either event, "physical contact by the unidentified vehicle with"[6] Mamie Johnson, and its driver was obliged to give his name, address and registration number and to render reasonable assistance in securing medical aid or transportation and to make a report to police authorities.[7]

## II

In *Dodd v Secretary of State,* 390 Mich 606, 613; 213 NW2d 109 (1973), this Court held that a prima facie case against the Secretary of State under the Motor Vehicle Accident Claims Act was made on the plaintiff's testimony that he had looked both ways and had seen no traffic before crossing the street, and a witness's testimony that she saw no lights other than the tail lights on the hit-run car: "A jury could have found that the hit-run car was traveling without lights, in violation of our motor vehicle code, and by so doing was negligently operated."

Three justices, concurring in the result, would have held that the driver's failure to stop and identify himself was itself a circumstance from

[6] See fn 2, *supra.*

[7] See fn 2, *supra.*

which some negligence on the part of the driver could be inferred.

"Even without the specific requirements of the foregoing statute [requiring a driver to stop and give information and aid], it would be safe to say that an ordinarily prudent person has an obligation to stop and render assistance to a fellow human being who has been injured in a collision with his motor vehicle. *It would be most unenlightened for the law to countenance an advantage to the hit-and-run driver arising out of his violation of a statutory and common-law duty to stop.* The failure to stop is inconsistent with an assumption that the hit-and-run driver was exercising due care at the time of the collision. Failure to stop creates an inference in the minds of reasonable people that the driver does not wish to be identified and that his wish to be unidentified stems from a fear of the consequences of being known. This line of reasoning comports with the ordinary experiences of people in their everyday lives." *Dodd v Secretary of State, supra,* pp 618-619 (BRENNAN, J.) (emphasis supplied).

The trial judge correctly observed that the separate opinion was not precedentially binding because a majority of the Court had not signed it.[8] He said further that the view there stated was "not legally sound". This Court, he said, has wavered in criminal cases regarding the admissibility of evidence of flight, and the only case concerning the question whether evidence of flight alone was sufficient held that it was not.[9]

There is no need to seek to reconcile decisions in criminal and civil cases or, indeed, to determine whether flight alone is probative of consciousness of wrongdoing.

We do not maintain that an inference of negli-

[8] See *Negri v Slotkin,* 397 Mich 105; 244 NW2d 98 (1976).

[9] He referred to *People v Harter,* 244 Mich 346; 221 NW 302 (1928); and *People v MacCullough,* 281 Mich 15; 274 NW 693 (1937).

gence may be drawn from flight alone. Since an automobile driver may not lawfully leave the scene of an automobile accident, flight does not stand alone. One who flees from the scene of an accident violates the statutory obligations to stop, give information and aid, and to make a report, and thereby subjects himself to the imposition of a severe prison term. It is reasonable, therefore, to draw inferences from the flight of a driver involved in an automobile accident that might not be appropriate in another case.

To be sure, it is possible that for personal reasons, innocent as far as the law is concerned, a driver may wish to avoid identifying himself. A person may flee for reasons other than culpability in the accident—because of fear, to avoid "becoming involved", or to avoid publicity and embarrassment in being at the scene. Nevertheless, because violation of the statutory duties may subject a fleeing driver to severe penalty and it is unlikely, weighing the probabilities, that there would be a reason unrelated to culpability in the accident that would outweigh the risk of that penalty, it is reasonable to draw the inference that he fled to avoid revealing such culpability.

Courts in other jurisdictions have said that flight permits an inference of negligence. In *Jones v Strelecki,* 49 NJ 513, 519; 231 A2d 558, 561 (1967),[10] the New Jersey Supreme Court declared in an action to recover for injuries caused by a hit-run driver under a statute similar to the Michigan statute:

"The purpose of this section of the Motor Vehicle Act

---

[10] In the cited case, other facts and circumstances were shown, such as the location of the body, but these in and of themselves were not dispositive. We read the case as holding that the inference of fault was reasonable because of flight.

is to prevent a driver from evading his responsibility by escaping from the scene. [Citation omitted.] More specifically, in the context of this case, the failure to stop permits an inference of consciousness of lack of care and of liability for the occurrence. For example in *Vuillemot v August J Claverie & Co,* 12 La App 236; 125 So 168, 169-170 (1929), the court said:

" 'Then, too, since the accident was caused by a truck and since no truck stopped, either the driver of the truck which caused it was not keeping a proper lookout, or he drove away in an effort to avoid being caught. If he had been keeping a proper lookout, surely he would have noticed that the truck struck the young lady with its front fender. If he was not keeping a proper lookout, he was negligent. If he did know that he struck the young lady and did not stop, then his action in attempting to escape was tantamount to an admission of guilt. We have therefore come to the conclusion that, although the evidence as to the facts of the accident is very meager, there is sufficient in the record to warrant the finding that the young lady was killed by a truck and that the driver of the truck was at fault.' "

Other courts have also recognized that an inference of negligence may be drawn from a driver's flight from the scene of an accident.[11]

Our colleagues state that the cases from other jurisdictions are distinguishable because in those cases there was other evidence of the circumstances of the accident. The deficiency in this plaintiff's proofs which they identify may, however, properly be attributed to the driver's failure to comply with the statutory obligations to stop, give information and aid, and to make a report. If

[11] See *Shaddy v Daley,* 58 Idaho 536; 76 P2d 279 (1938); *Lynch v McGovern,* 270 So 2d 770 (Fla App, 1973); *Busbee v Quarrier,* 172 So 2d 17 (Fla App, 1965); *Kotler v Lalley,* 112 Conn 86; 151 A 433 (1930); *State v Ford,* 109 Conn 490; 146 A 828 (1929); *Battle v Kilcrease,* 54 Ga App 808; 189 SE 573 (1936); *Harrington v Sharff,* 305 F2d 333 (CA 2, 1962); *Brooks v E J Willig Truck Transportation Co,* 40 Cal 2d 669; 255 P2d 802 (1953).

the driver had done so, it is likely that there would have been evidence of the "width, location, direction and surface of the roadway where the accident occurred, the weather conditions and the time of day of the accident, and the location and position of the injured person".

The rule is well established that where there is a deliberate destruction of or failure to produce evidence in one's control a presumption arises that if the evidence were produced it would operate against the party who deliberately destroyed or failed to produce it.[12] In the ordinary civil case a party may be under no legal obligation to produce evidence and yet such a presumption arises. The policy reasons for creating such a presumption are more compelling where the evidence is withheld in violation of a statutory duty to produce it.

### III

We are of the opinion that the inference of culpability flowing from the willingness of the driver to incur the severe penalties which attach to non-compliance with the statutory duties to stop, give information and aid, and to make a report, should be coupled with the adverse inference which arises from destruction or nonproduction of evidence to create a presumption of negligence that relieves the plaintiff of the burden of producing evidence of the circumstances of the accident in those cases where the loss of such evidence may properly be attributable to the driver's breach of his statutory duties and the plaintiff is not otherwise able to produce evidence of such circumstances.

The presumption is, of course, rebuttable; the

---

[12] See fn 4, *supra*.

inference of negligence is mandatory only in the absence of evidence tending to prove due care. If the defendant can produce evidence, for example, that the driver skidded on an oil slick, or the victim walked in front of the car, or the driver lost control due to a blowout, the inference ceases to be mandatory and the trier of fact can choose whether to infer negligence.

The law is replete with presumptions and inferences drawn from other facts. Human experience tells us that often a state of facts is likely to exist although it cannot be directly proven. A presumption eases the proponent's burden of production on the ultimate fact and allows a meritorious case to be established on proof of facts which justify an inference of the ultimate fact. If the trier of fact finds the fact which supports the presumption, the ultimate fact must be found in the absence of evidence to the contrary. If contrary evidence is offered, the trier is free from the compulsion of the presumption and weighs all the evidence, including the evidence of the basic fact. The trier is free to infer the existence of the ultimate fact, but the law does not require it.[13]

Courts create presumptions for a variety of reasons: to avoid an impasse where evidence of the presumed fact is lacking, as where a person's unexplained absence of seven years creates a presumption of death; to produce a result in accordance with human experience, as where a child born in wedlock is presumed to be legitimate; to reach a result deemed to be socially desirable, as where long possession of real estate creates a presumption that the possessor holds under a lost

---

[13] *In re Wood Estate,* 374 Mich 278, 290-292; 132 NW2d 35; 5 ALR3d 1 (1965); *Kar v Hogan,* 399 Mich 529, 541; 251 NW2d 77 (1976).

grant.[14] In such cases the law aids the party making use of the presumption in proving his case. He cannot produce evidence of the presumed fact, but evidence of other facts puts in issue the existence of the presumed fact and demands evidence of its non-existence.

Analogous is "the presumption of law" concerning the defendant's state of mind and, hence, culpability, that arises from "the act of killing" "that it was done with malice aforethought" which was said to obtain "where there was an entire absence of qualifying or explanatory evidence involved in, or deducible from, the manner of the killing",[15] a presumption which permits the people to make a prima facie case without producing evidence regarding the defendant's state of mind.

Providing a presumption of negligence in a case such as this is a fairer allocation of the burden of producing evidence than to impose the entire burden on the plaintiff and to relieve the Secretary of State, who stands in the shoes of the defaulting driver, of any burden whatsoever.

The plaintiff proved that the unidentified driver killed Mamie Johnson and in violation of the statute did not stop, give information and aid and make a report, but fled. But for such violation Mamie Johnson may have survived to testify and, even if she was killed instantly, the circumstances of the accident would have been timely investigated and developed and the evidentiary gap

---

[14] Morgan, Basic Problems of Evidence (4th ed), pp 31-34; Tracy, Handbook of the Law of Evidence, pp 29-35; 1 Jones on Evidence (6th ed), § 3:1, p 125; 9 Wigmore on Evidence (3d ed), §§ 2487, 2491, 2494, pp 278-284, 288-292, 293-300.

[15] *People v Potter,* 5 Mich 1, 9 (1858). Similarly, see Perkins, Criminal Law (2d ed), p 50. But see LaFave & Scott, Criminal Law, § 68, p 539, fn 36. Compare *People v Haack,* 396 Mich 367, 377-378; 240 NW2d 704 (1976).

which our colleagues say distinguishes this case from *Dodd* and cases from other jurisdictions would have been eliminated.

Because the evidentiary gap is substantially attributable to the driver's failure to comply with his statutory duties and because, in light of the severe penalties for not doing so, he would probably have complied if he were not culpable, a presumption of negligence is both fair and in accord with the probabilities. There is greater risk that a meritorious case will fail due to insistence on the usual allocation of the burden of producing evidence than that a jury will bring in a favorable verdict in a non-meritorious case.

The Motor Vehicle Accident Claims Act is remedial. One of its purposes is to provide a remedy to the victim of an unidentified hit-run driver.

The unwitnessed fatal accident is a likely cause for claim under the statute. If the accident is witnessed or the victim survives, the driver is more likely to be identified. It would be incongruous if the very circumstance which makes this case appropriate for recovery from the accident claims fund should operate to preclude recovery.

The purposes of the statutes requiring a driver to stop and give information and aid and to make a report and of the statute providing a source of recovery for injuries caused by a hit-run driver support the inference of negligence derived from flight and non-compliance with such statutory obligations.

We reverse and remand for a new trial.

KAVANAGH, WILLIAMS, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with LEVIN, J.

RYAN, J. I cannot agree that the learned trial

judge erred in granting the defendant's motion for directed verdict.

Plaintiff, administrator of the estate of Mamie Jean Johnson, deceased, brought this action against the Secretary of State pursuant to the Motor Vehicle Accident Claims Act,[1] to recover for the wrongful death of the decedent allegedly caused by an unidentified hit-and-run driver.

There were no witnesses to the accident. At trial, plaintiff submitted no evidence as to where, by whom, and when the body of the decedent was found, and no evidence was produced concerning the circumstances of the accident itself.

The only testimony produced on behalf of the plaintiff was that of the county medical examiner who performed the autopsy on the decedent. He testified concerning the nature and extent of the decedent's injuries and expressed the opinion that the injuries were of the type characteristic of automobile accidents.

The defendant moved for a directed verdict at the close of plaintiff's proofs. In response, the plaintiff argued that evidence of the driver's flight from the scene of the accident should be sufficient to raise a presumption of negligence. The trial court held, however, that evidence of flight alone was an insufficient basis upon which to submit to the jury the issue of the defendant's negligence and granted the defendant's motion for directed verdict.

The Court of Appeals affirmed. This Court granted leave to appeal on the following issues: 1) in an action based upon MCL 257.1112; MSA 9.2812, is evidence that the motor vehicle did not stop after the accident sufficient to create a presumption of negligence avoiding a directed verdict,

---

[1] MCL 257.1112; MSA 9.2812.

and 2) did the trial court commit reversible error in granting defendant's motion for directed verdict.

## I

The Motor Vehicle Accident Claims Act establishes a statutory cause of action against the Secretary of State in hit-and-run accidents and in pertinent part provides:

"Where the death of or personal injury to any person is occasioned in this state by a motor vehicle but the identity of the motor vehicle and of the driver and owner thereof cannot be established, any person who would have a cause of action against the owner or driver in respect to the death or personal injury may bring an action against the secretary, * * *." MCL 257.1112; MSA 9.2812.

The legislative purpose that an injury or death suffered in an alleged hit-and-run accident would be compensable from the Motor Vehicle Accident Claims Fund only when the plaintiff sustains the burden of proof on his cause of action is evidenced in part by § 16 of the act which provides:

"In an action against the secretary, he may deny generally the allegations in respect to the unidentified motor vehicle and unidentified owner and driver thereof and shall not be required to set forth the facts upon which he relies." MCL 257.1116; MSA 9.2816.

The driver of a motor vehicle involved in an accident who fails to stop and identify himself and render aid or assistance to a person injured as a result of the accident is criminally liable. MCL 257.617; MSA 9.2317. While ordinarily the violation of a statutory duty constitutes negligence per

se, in order to sustain a verdict for the plaintiff the violation must have been a proximate cause of the plaintiff's injury. *Baker v Saginaw City Lines, Inc,* 366 Mich 180; 113 NW2d 912 (1962); *Holbert v Staniak,* 359 Mich 283; 102 NW2d 186 (1960); *Holmes v Merson,* 285 Mich 136; 280 NW 139 (1938). Manifestly, a driver's violation of the statutory duty to stop and give information and render assistance to persons injured in an auto accident is a violation which occurs *after* the accident and necessarily subsequent to the alleged negligent conduct which causes the accident. Consequently, such statutory violation cannot constitute negligence per se proximately contributing to the injury or death of a person involved in such an accident in the absence of proof that the failure to stop and give information and aid was a cause of further injury or of death. Since, in the case before us, there is no claim or proof of further or aggravated injury or of death, the unknown driver's statutory alleged violation does not constitute negligence per se with respect to the death of plaintiff's decedent.

II

Because in the case before us there was no direct or circumstantial evidence of negligence causing the death of plaintiff's decedent, the plaintiff relies upon the probative value attributable to evidence of flight in order to sustain the burden of proof as to the negligence of the hit-and-run driver.

Logically, the failure of a driver of a motor vehicle to stop at the scene of an accident in which he is involved is relevant in determining the driver's consciousness of his responsibility for the acci-

dent.[2] The flight of an accused from the scene of a crime is comparable conduct and of a type which the jury may consider as evidence tending to disclose a consciousness of guilt in the mind of the defendant. See *People v Kyles,* 40 Mich App 357; 198 NW2d 732 (1972).

However, the equivocal nature of flight under any circumstances has been cause for concern to this Court on previous occasion.

"Flight from the scene of a tragedy may be quite as consistent with innocence as with guilt. One, who in self-defense kills or maims another, may through ignorance of the law or through panic flee from the scene of his act, and yet be perfectly innocent. We think it would be a dangerous rule which would permit the jury to consider flight as substantive evidence of guilt." *People v Cismadija,* 167 Mich 210; 132 NW 489 (1911).

Consequently, no inference or presumption of guilt is raised by evidence of flight *alone.* While flight is some evidence tending to prove that the fleeing person believes himself responsible for the mishap, caution must be exercised by the trial judge to prevent the jury from reaching a verdict based on that factor alone. The procedural rules for a directed verdict and a judgment notwithstanding a verdict are the devices by which the trial judge exercises such caution as a matter of law. See discussion Part III, *infra.*

In hit-and-run accident cases, evidence of flight is more probative of negligence when other, usually circumstantial, evidence as to the cause of impact is adduced. The width, location, direction and surface of the roadway where the accident occurred, the weather conditions and time of day

[2] *Shaddy v Daley,* 58 Idaho 536; 76 P2d 279 (1938); *Harrington v Sharff,* 305 F2d 333 (CA 2, 1962).

of the accident, and the location and position of the injured person are all matters of circumstantial evidence of the vehicle's operation and speed, the driver's ability to have seen and avoided the defendant, and the pedestrian's probable course and conduct prior to the accident.

When a person is struck by an automobile under circumstances that suggest to the reasonable person that the accident might have been avoided but for some amount of blameworthy conduct on the part of the driver, an inference of negligence may well arise upon evidence of the driver's flight.

"The failure to stop is inconsistent with an assumption that the hit-and-run driver was exercising due care at the time of the collision. Failure to stop creates an inference in the minds of reasonable people that the driver does not wish to be identified and that his wish to be unidentified stems from a fear of the consequences of being known." *Dodd v Secretary of State,* 390 Mich 606, 619; 213 NW2d 109 (1973) (BRENNAN, J., concurring).

Needless confusion has evolved from the inexact use of the term "inference" to describe the probative value of evidence of flight. The drawing of permissible inferences in the judicial fact-finding process is nothing more than the application of proposals of logic or rationalization in order to make certain deductions from known facts. Unlike a *presumption,* which arises from the high degree of probative or inferential value which flows from a particular set of basic facts, an *inference* is not a rule of law and is simply descriptive of the process of logic which is employed in reaching conclusions from established facts in evidence.[3]

---

[3] 1 Jones, The Law of Evidence (6th ed), § 3:2, p 128.

Uniformly, cases in which any inferential value is attributed to evidence of flight are those in which courts have discussed the initial admissibility of evidence of flight in situations where substantial circumstantial evidence was also produced concerning the accident itself. In all of the cases to which plaintiff invites our attention, the records were replete with evidence concerning the circumstances which existed at the accident scene.[4]

## III

A conclusion that a driver's flight from the scene of an accident may be considered as some evidence of the driver's culpable state of mind does not end our present inquiry. The question remains whether the whole of the evidence submitted by plaintiff in this case, when examined in a light most favorable to the plaintiff, was sufficient to withstand a motion by defendant for a directed verdict.

At trial, the only testimony introduced by the plaintiff on the liability issue was that of the medical examiner who performed the autopsy on the deceased. The witness described the nature and extent of the deceased's injuries and expressed the opinion that the injuries were "such that are seen by me and my colleagues in the cases of car accidents". No evidence as to where the decedent's body was found or the circumstances surrounding the accident or concerning the accident scene was produced and, of course, there was no identification of the driver of a motor vehicle which could have struck the decedent.

Defendant moved for a directed verdict at the

---

[4] *Shaddy v Daley, supra; Olofson v Kilgallon,* 362 Mass 803; 291 NE2d 600 (1973); *Jones v Strelecki,* 49 NJ 513; 231 A2d 558 (1967).

close of plaintiff's proofs. In granting the motion
the trial court stated:

"Taking the evidence in the light most favorable to
the plaintiff, there was an accident with an automobile.
I believe the evidence is sufficient for a reasonable trier
of fact to find that the deceased was struck by an
automobile.

"There · was evidence from the medical examiner,
which will remain in the record, that he believed that
this woman suffered fatal injuries in an automobile
accident, but that it is not sufficient evidence for a jury
to find any negligence. The only evidence upon which
the plaintiff here can rely to show negligence on the
part of the driver is the evidence of flight.

*   *   *

"Is evidence of flight enough to go to the jury? I think
not, not even based upon the reason of the three-man
minority in the *Dodd* versus the *Secretary of State.* The
majority, of course, did not predicate its opinion on the
proposition that flight creates evidence of negligence
sufficient to create an issue of fact for the jury."

On review of a grant of motion for directed
verdict, the question for this Court is whether the
plaintiff produced sufficient evidence to go to a
jury on a material question of fact which, if deter-
mined in plaintiff's favor, would entitle the plain-
tiff to a judgment. *Marietta v Cliffs Ridge, Inc,* 385
Mich 364; 189 NW2d 208 (1971); *Daniel v Mc-
Namara,* 10 Mich App 299; 159 NW2d 339 (1968).

While variously stated by different courts, the
measure of evidence sufficient to make a submitta-
ble question of fact for the jury is something less
than a preponderance of evidence and something
more than a mere scintilla of evidence. See *Lebeis
v Rutzen,* 289 Mich 1; 286 NW 134 (1939). Submis-
sion by the plaintiff of merely some evidence will
not withstand a motion for directed verdict where

the evidence produced is insufficient to allow a jury to draw reasonable inferences as to the defendant's alleged negligent conduct.

The evidence adduced by the plaintiff on the liability issue in this case consisted solely of proof of the fact of an auto accident plus flight by the driver. We agree with the trial judge that the testimony of the medical examiner, read in a light most favorable to the plaintiff, establishes only that the deceased was involved in an automobile accident. The mere happening of an accident, however, is not itself evidence of negligence. In order to take the case out of the realm of conjecture and within the field of legitimate inferences from established facts, negligence must be established by direct or circumstantial evidence which gives rise to an inference that a cause of the accident was the defendant's carelessness. *Gadde v Michigan Consolidated Gas Co,* 377 Mich 117, 121; 139 NW2d 722 (1966); *Mercure v Popig,* 326 Mich 140, 145; 40 NW2d 95 (1949).

Conspicuously lacking in plaintiff's proofs is any circumstantial evidence tending to show where the body of the deceased was found, the road and weather conditions, or any other factors probative of negligence causing the impact.

By producing no more than evidence of an automobile accident and subsequent flight, the plaintiff failed to establish a prima facie case of negligence warranting submission to the jury of any factual issue. Analogous for purposes of this analysis has been this Court's treatment of flight in criminal prosecutions. Even though flight may be shown as evidence tending to show the defendant's culpable state of mind, flight alone is not sufficient to submit the case to the jury. See *People v Cismadija, supra.*

Jury instructions approved by the California court in *Brooks v E J Willig Truck Transportation Co,* 40 Cal 2d 669, 676; 255 P2d 802, 806 (1953), a hit-and-run case, are enlightening; "[T]he fact that Farnsworth left the scene of the accident could not, in and of itself, be the basis of a verdict against defendants [Farnsworth and his employer], and if Farnsworth was not guilty of negligence which caused the accident and death of Brooks, or if Brooks was guilty of negligence which contributed to his injury and death, the verdict must be for defendants, regardless of what Farnsworth did or failed to do after the accident." Implicit in the court's instructions was the proposition that a prima facie case of negligence against the hit-and-run driver would first have to be established by independent evidence before flight could be considered as evidence of the driver's culpable state of mind.

In support of his claim that evidence of flight alone makes out a jury-submissible issue on the liability questions in this case, the plaintiff relies upon *Jones v Strelecki,* 49 NJ 513, 517; 231 A2d 558, 560 (1967). A careful examination of that case demonstrates, however, that then its facts are juxtaposed with the plaintiff's proofs in this case, the probative value attributable to evidence of flight alone appears in clearer perspective. Pertinent portions of the plaintiff's proofs in *Jones* were summarized by the New Jersey Supreme Court as follows:

"There were no eyewitnesses to the fatal accident. Most of the proof adduced came from a State Trooper who appeared on the scene about 3:55 a.m. on September 29, 1962, some short time after the mishap.

"The accident occurred in Elk Township, Gloucester County, on the Glassboro-Centerton Road, called Buck

Road, about three-tenths of a mile south of the Glass-boro-Elk Township line. The area is rural. The road, which is straight and level for a considerable distance, is 20 feet wide with a 2-foot shoulder on each side. It has no artificial lighting. The roadway and the shoulders have a blacktop surface. There are no curbs or sidewalks for pedestrian travel. Beyond the 2-foot shoulders are dirt and grass. There is no intersecting street to the township line.

"The night of the accident was clear and the roadway was dry. When the trooper arrived at the scene he found the body of the deceased, Reuben O. Jones, age 33 years, lying at an angle across the center line of the roadway, the head pointing toward the east. It was in a pool of blood. The body was 'broken up;' a bone was protruding from the left leg. He found the decedent's left shoe on the westerly shoulder 47'2" north of the body; 48'8" farther north he found a sizable piece of bone, obviously from the broken left leg. It too was on the westerly shoulder. Thus the bone was 95'10" from the resting place of the body.

"Further examination of the roadway in both directions revealed no skid marks or tire marks of any kind on the traveled surface or on the shoulders; nor did it disclose any debris or dirt spots which might indicate the point of impact."

The court then concluded:

"We agree that the evidence of the culpable producing cause of the accident is meager. But in our judgment, viewing the circumstances in their totality and giving the plaintiff the benefit of all favorable inferences from them, as we must, factual issues are sufficiently raised as to whether Jones was struck by a motor vehicle, and as to the driver's negligence and decedent's contributory negligence, to require submission of the case to a jury for determination.

"Here we have a straight, level roadway with nothing to obstruct the view ahead. A motorist driving along it would naturally be conscious of the absence of sidewalks, and thus chargeable with knowledge that pedes-

trians would walk on the narrow shoulders immediately adjacent to the limited 10-foot normal travel width of the roadway for each direction. Such circumstances, of course, demanded reasonably diligent use of his powers of observation." *Id.* (Citations omitted.)

By way of dictum the court then added, *"in the context of this case,* the failure to stop permits an inference of consciousness of lack of care and of liability for the occurrence". *Id.,* 519. (Emphasis added.)

The New Jersey court's characterization of plaintiff's proofs in *Jones* as "meager", before even addressing the significance of flight, does not escape our attention. In comparison to the amount and quality of evidence produced by the plaintiff in *Jones,* the evidence introduced by the plaintiff in this case is simply insignificant.

Plaintiff did not make out a jury-submissible case and for that reason the decision of the Court of Appeals should be affirmed.

COLEMAN, C.J., concurred with RYAN, J.